# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

SCOTT BAKER,

                         Plaintiff,                    8:18-cv-00950 (BKS/DJS)

v.

CHAD SPINNER; RYAN YADDOW;
FRANKLIN COUNTY DEPARTMENT OF
PROBATION; COUNTY OF FRANKLIN;
JOHN DOE #1; and JOHN DOE #2,

                         Defendants.

---

**Appearances:**

*For Plaintiff*:
Noreen McCarthy
Office of Noreen McCarthy
P.O. Box 756
Keene Valley, NY 12943

*For Defendants Spinner, Yaddow, Franklin County Department of Probation, and County of Franklin*:
Gregg T. Johnson
April J. Laws
Loraine Clare Jelinek
Johnson & Laws, LLC
648 Plank Road, Suite 204
Clifton Park, NY 12020

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff Scott Baker brings this action under 42 U.S.C. § 1983, asserting claims against the County of Franklin and the Franklin County Department of Probation (the "County Defendants"), Defendant Probation Officers Chad Spinner and Ryan Yaddow, and two unnamed

supervisors of the Franklin County Department of Probation (the "Doe Defendants"). Plaintiff alleges that, in violation of the "Fourth, Fifth, Eighth, and Fourteenth Amendments," Defendants Spinner and Yaddow maliciously prosecuted him, deprived him of due process of law, and failed to intercede to prevent constitutional wrongs against him, (Dkt. No. 1, ¶¶ 1–2, 27–32, 38–40), and that, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the County Defendants are liable for Spinner's and Yaddow's conduct, (*id.* ¶¶ 33–37). Plaintiff also appears to assert state law claims for unlawful imprisonment, intentional infliction of emotional distress, malicious prosecution, negligent supervision and training, and violations of the New York State Constitution. (*Id.* ¶¶ 1, 38–40). Defendants move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Dkt. No. 20). Plaintiff opposes the motion. (Dkt. No. 22). For the reasons set forth below, Defendants' motion is granted.

## II.  BACKGROUND[1]

In September 2013, Plaintiff pled guilty to and was convicted of three counts of third-degree criminal sale of a controlled substance and three counts of third-degree criminal possession of a controlled substance in violation of New York Penal Law § 220.29(1) and § 220.16(1), respectively. (Dkt. No. 1-1, at 2). In addition to a term of 180 days in the Franklin County Correctional Facility, Plaintiff was sentenced to five years of probation. (*Id.*).

On June 17, 2015, a declaration of delinquency[2] was filed in the County Court, County of Franklin, alleging that Plaintiff violated six of the terms and conditions of his probation

---

[1] All facts, which are taken from the Complaint and exhibits attached thereto, are assumed to be true for purposes of this motion. *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

[2] Section 70.40 of the New York Penal Law provides, in relevant part: "When a person is alleged to have violated the terms of his or her conditional release . . . and has been declared delinquent by . . . the local conditional release commission having supervision over such person, the declaration of delinquency shall interrupt the period of . . . post-release supervision as of the date of the delinquency." N.Y. Penal Law § 70.40(3)(b). "When the court receives a request for a declaration of delinquency by a probation officer, it shall make a decision on such request within seventy-two hours of its receipt of the request. Upon filing a written declaration of delinquency, the court must promptly take reasonable and appropriate action to cause the defendant to appear before it for the purpose of enabling the court to

2

"numbered four, eleven, fifteen, sixteen, nineteen, and twenty-five." (*Id.* at 2). On July 24, 2015, an amended affidavit and amended statement of violation were filed, alleging that Plaintiff also violated "condition number twenty-four." (*Id.*). The amended documents also added an allegation that on July 22, 2015 Plaintiff "tested positive for and admitted to using opiates and cocaine." (*Id.*).

On August 5, 2015, Defendant Probation Officer Yaddow performed a search of Plaintiff's home while working "under the direct supervision" of Defendant Probation Officer Spinner and the Doe Defendants. (Dkt. No. 1, ¶ 20). On August 10, 2015, Spinner and Yaddow filed a second amended affidavit and statement of violation in Franklin County Court. (Dkt. No. 1-1, at 2). "The second amended documents alleged a new arrest on August 5, 2015 . . . by the Tupper Lake Police Department charging [Plaintiff] with three counts of Criminal Possession of a Controlled Substance Seventh Degree and one count of Unlawful Possession of Marijuana after a search by the [Franklin County] Probation Department with the assistance of the Tupper Lake Police Department." (*Id.* at 2–3). Plaintiff alleges that, in the second amended documents, Yaddow's affidavit falsely stated "that Plaintiff possessed, on August 5, 2015, methamphetamine, when in fact the Plaintiff did not possess methamphetamine and Defendant's [sic] had not found any methamphetamine during the search of Plaintiff's home." (Dkt. No. 1, ¶ 20). Plaintiff alleges that "[b]ased in part on this false accusation," the defendants filed a statement of violation of probation, and that the documents were relied upon "to impose a significantly lengthy prison term." (*Id.* ¶¶ 16, 20).[3]

---

make a final determination with respect to the alleged delinquency in accordance with section 410.70 of this article." N.Y. Crim. Proc. Law § 410.30.

[3] There is no indication that the allegation concerning methamphetamine on August 5, 2015 was alleged as a new violation; it is not mentioned in the state court decision vacating Plaintiff's sentence. (Dkt. No. 1-1, at 2–3).

On September 3, 2015, Plaintiff appeared before Franklin County Court Judge Robert G. Main, Jr. for a fact-finding hearing regarding the alleged violations of probation. (*Id*. ¶¶ 21–22; Dkt. No. 1-1, at 3–4). Prior to the hearing, Judge Main held an in-chambers conference attended by Gregory LaDuke, Plaintiff's then-counsel; Defendant Probation Officer Spinner; and Assistant District Attorney Gary Pasqua. (Dkt. No. 1-1, at 3). The conference was held off the record and outside of Plaintiff's presence. (*Id.*). During the conference, Assistant District Attorney Pasqua indicated that the People would be satisfied with concurrent terms of two and one-half years. (*Id.*). Judge Main then asked Spinner for his input. (*Id.* at 3–4). Spinner responded that he thought Plaintiff was a "big time drug dealer" responsible for causing the fatal overdose of an individual in Tupper Lake, despite Spinner's knowledge that "the Tupper Lake Police Department had already concluded its investigation . . . and had never suspected Plaintiff to be responsible in any way" for the death. (Dkt. No. 1, ¶¶ 21–22; *see* Dkt. No. 1-1, at 3–4). Although Spinner "knew full well that [his accusation] was unsupported by any evidence," (Dkt. No. 1, ¶ 22; *see* Dkt. No. 1-1, at 6), he nevertheless recommended that the court revoke Plaintiff's probation and resentence him to a "significant period of incarceration," (Dkt. No. 1, ¶¶ 21–22). Plaintiff alleges that, because Spinner failed to provide Plaintiff with "prior notice . . . that he intended to make this accusation," Plaintiff had "no opportunity to investigate or defend" himself to Judge Main before he was resentenced. (*Id.* ¶ 21).

The fact-finding hearing did not go forward. Instead, Plaintiff admitted to the following factual allegations contained within the second amended documents: (i) "that he had tested positive for marijuana on May 28, 2014, thus, violating condition number twenty-five of his terms and conditions of probation"; (ii): "that[,] when admitted to the St. Lawrence Addiction Treatment Center on May 20, 2015, he tested positive for cocaine, suboxone and opiates, and

4

that he was unsuccessfully discharged from the center on June 15, 2015, after admitting he took suboxone that was not prescribed for him thus, violating conditions numbered fifteen, sixteen and twenty-four of his terms and conditions of probation"; and (iii) "that he tested positive for opiates and cocaine on July 22, 2015, and admitted using the same over the previous weekend with acquaintances, in violation of condition number twenty-five of his terms and conditions of probation." (Dkt. No. 1-1, at 3). All of the conduct to which Plaintiff admitted occurred before the search of Plaintiff's home on August 5, 2015 and subsequent filing of the second amended documents on August 10, 2015. (*Id.* at 2–3).

Notwithstanding Assistant District Attorney Pasqua's recommendation of concurrent terms of two and a half years, Judge Main resentenced Plaintiff to seven and one-half years in prison.[4] (Dkt. No. 1, ¶¶ 21–22; Dkt. No. 1-1, at 7). Plaintiff alleges that the court resentenced Plaintiff to a much lengthier term of imprisonment than it otherwise would have because the court relied on the false information provided by Spinner, who "refused to place any of [the] information on the record in open court and in front of the plaintiff." (Dkt. No. 1, ¶ 21–22; *see* Dkt. No. 1-1, at 7, 13).

On November 4, 2016, Plaintiff filed a motion to vacate his guilty plea and sentence, asserting that it was obtained "by duress, misrepresentation, or fraud on the part of . . . a person acting for or in behalf of a court or prosecutor" under New York Criminal Procedure Law ("CPL") § 440.10. (Dkt. No. 1-1, at 1, 9). After holding a fact-finding hearing on January 27, 2017 and February 16, 2017, Franklin County Court Judge Jerome J. Richards found no evidence calling into question "the propriety of the defendant's conviction by his guilty plea" in 2013 or

---

[4] Specifically, Plaintiff's sentence consisted of three consecutive terms of two and one-half years for criminal sale of a controlled substance in violation of New York Penal Law § 220.29(1), to be served concurrently with three consecutive terms of two and one-half years for criminal possession of a controlled substance in violation of New York Penal Law § 220.16(1). (Dkt. No. 1-1, at 3).

5

his September 2015 admissions that he violated the terms of his probation. (*Id.* at 7–8). Judge Richards, however, vacated Plaintiff's sentence under CPL § 440.20(1), concluding that Spinner's statements to the court during the September 3, 2015 in-chambers conference constituted material misrepresentations to the court that, "even if not considered by the judge, were nevertheless so prejudicial" that a "finding that [Plaintiff] has established a due process violation" was warranted. (Dkt. No. 1-1, at 13–14 (citing CPL §§ 440(1)(b) and (h)); *see also* Dkt. No. 1, ¶ 26). Accordingly, Judge Richards vacated Plaintiff's sentence. (Dkt. No. 1-1, at 13–14). Plaintiff initiated this action on August 9, 2018. (Dkt. No. 1).

## III. STANDARD OF REVIEW

The standard of review for a motion under Rule 12(c) is the same as a motion under Rule 12(b)(6). *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Communs, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). When deciding a motion for judgment on the pleadings, a court's review is ordinarily limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any

documents incorporated in the complaint by reference." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

## IV. DISCUSSION

### A. Section 1983 Claims Against Spinner and Yaddow

Two distinct acts constitute the core of Plaintiff's allegations against Spinner and Yaddow: (i) Spinner's false statements to Judge Main indicating that Plaintiff was a "big time drug dealer" responsible for causing an individual's death by overdose; and (ii) Spinner and Yaddow's false accusation in the second amended submission that Plaintiff was found in possession of methamphetamine during the August 5, 2015 search of his home. Defendants argue that Plaintiff's § 1983 claims against Spinner and Yaddow should be dismissed because: (i) as probation officers, Spinner and Yaddow are absolutely immune from suit; and (ii) alternatively, they are qualifiedly immune. Defendants also challenge Plaintiff's theory of liability, arguing that they are neither amenable to suit nor subject to civil liability for a sentence imposed by the state court judge. Plaintiff responds that: (i) Spinner is not entitled to absolute immunity for his false statements during the September 3, 2015 conference because he was "not acting in a quasi-judicial function," (Dkt. No. 22, at 7); and (ii) neither Spinner nor Yaddow are "eligible for qualified immunity" for their false allegation that Plaintiff possessed methamphetamine "because . . . they violated a constitutional right of the plaintiff, and . . . that right was clearly established at the time of the violation." (Dkt. No. 22, at 13). Plaintiff also asserts that he has plausibly stated a due process violation caused by the Defendants.

#### 1. Absolute Immunity

"As a general matter, probation officers are entitled to immunity in the performance of their duties, but the type of immunity afforded depends on whether 'the duties of the defendants were judicial or prosecutorial, which entitles them to absolute immunity, or administrative,

7

which may entitle them to qualified immunity.'" *Dettelis v. Sharbaugh*, 919 F.3d 161, 164 (2d Cir. 2019) (quoting *King v. Simpson*, 189 F.3d 284, 288 (2d Cir. 1999)). To determine whether an official's actions served a judicial function, courts consider the degree to which the conduct was subject to procedural safeguards, such as whether the context in which it performed "was adversarial in nature[,] . . . conducted by a judicial officer who rendered the final decision[,] and . . . subject to judicial review." *Sykes v. James*, 13 F.3d 515, 521 (2d Cir. 1993). "The more distant a function is from the judicial process, the less likely absolute immunity will attach." *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998) (alteration and internal quotation marks omitted).

Probation officers are therefore entitled to absolute immunity from suit while performing the judicially intertwined function of "preparing and furnishing presentence reports to the court," *Dorman v. Higgins*, 821 F.2d 133, 137 (2d Cir. 1987), as well as prosecutorial functions such as "initiating parole revocation proceedings and . . . presenting the case for revocation to hearing officers," *Scotto*, 143 F.3d at 112. "By contrast, in performing investigatory duties, for example, the filing of a violation report or recommending the issuance of an arrest warrant, a parole officer is entitled only to qualified immunity." *Id.* For example, an officer who submitted a false affidavit to a magistrate during an ex parte hearing to secure an arrest warrant was not entitled to absolute immunity. *Malley v. Briggs*, 475 U.S. 335, 345–46 (1986). Nor was a parole officer, "not perform[ing] under judicial direction and . . . before the initiation of parole revocation proceedings," who included false information in a parole violation report and "recommend[ed] that a warrant issue." *Scotto*, 143 F.3d at 112. On the other hand, a parole officer who submitted a false affidavit in a state court proceeding was found to be absolutely immune from suit because of the attendant "judicial process safeguards" of a state habeas proceeding, even though the

8

officer was not subject to cross examination. *Sykes*, 13 F.3d at 521 (distinguishing the facts at bar with those at issue in *Malley*, "in which a police officer applied to a magistrate for an arrest warrant based on a false affidavit").

Here, the Complaint and attached documents indicate that, during the in-chambers conference held in the presence of counsel, Judge Main asked Spinner "for his input" in the midst of a discussion between the parties about the appropriate sentence for the violations alleged. (Dkt. No. 1-1, at 3). Spinner "indicated to Judge Main that [Plaintiff] was involved or thought to be involved in [a] drug overdose death . . . and that Mr. Spinner thought [Plaintiff] was a big time drug dealer in the Tupper Lake community." (*Id.* at 3–4). Spinner's direct responses to questions from Judge Main, posed in the context of Judge Main's evaluation of the reasonableness of the sentence proposed by the parties, served a function "intimately associated with the *judicial* phase of the criminal process." *Malley*, 475 U.S. at 342 (internal quotation marks omitted). Providing information to a judge upon his or her request much more closely resembles a "judicial or prosecutorial" duty, *King*, 189 F.3d at 284, similar to presenting a presentence report to a judicial officer, than a function that is investigatory or administrative in nature, such as preparing a parole violation report and applying for an arrest warrant, *see Malley*, 475 U.S. at 345–46; *Scotto*, 143 F.3d at 112. Spinner is therefore entitled to absolute immunity for his statements to Judge Main during the in-chambers conference.

Whether Spinner and Yaddow are entitled to absolute immunity for the allegedly false statement that Plaintiff possessed methamphetamine, as included in the second amended submission, is a closer question. Although probation officers "receive absolute immunity for their actions in initiating . . . revocation proceedings," a probation officer "initiate[s] the prosecution" of a violation only where he or she has the "discretionary authority" to do so under

9

the law. *Scotto*, 143 F.3d at 112. In *Scotto*, the Second Circuit reasoned that, because a parole officer is "required" by New York regulations "to recommend that a warrant issue" upon "deciding that [the parolee] had probably violated his parole," a parole officer lacks the discretionary authority to initiate revocation proceedings by reporting a parole violation. *Id.* Rather, it is only "[o]nce a warrant is issued" that "the adjudicatory process begins." *Id.* Because a senior parole official—not the parole officer—"made the discretionary decision to issue the warrant and initiate the parole revocation 'prosecution,'" the court concluded that the parole officer was not entitled to absolute immunity. *Id.* at 112–13; *see also Taylor v. Sullivan*, 166 F.3d 1201, 1201 (2d Cir. 1998) (unpublished opinion) ("Under New York law, parole officers do not have the discretionary authority to initiate parole revocation proceedings, but may issue a report of an alleged violation to a member of the parole board." (alteration and internal quotation marks omitted)). Similarly, "in the context of the issuance of a Violation of Probation, . . . it is the judge"—not the probation officer—"who actually signs the Violation of Probation and makes the determination to issue the arrest warrant." *Gelatt v. Cty. of Broome*, 811 F. Supp. 61, 68 (N.D.N.Y. 1993); N.Y. Crim. Proc. Law § 410.40(2) ("Where the probation officer has requested that a probation warrant be issued, the court shall . . . issue or deny the warrant . . . ."); *see also United States v. Amatel*, 346 F.3d 278, 280 (2d Cir. 2003) (stating that, although federal probation officers "might recommend certain actions when filing a violation petition, the ultimate decision about whether to initiate revocation proceedings rested with the . . . court"). Thus, because probation officers in New York do not "initiate" revocation proceedings by their own discretion, they cannot be entitled to absolute immunity for filing a probation violation report or requesting a warrant "before the initiation of parole revocation proceedings." *Scotto*, 143 F.3d at 113.

Spinner and Yaddow, however, did not file the August 10, 2015 second amended documents for the purpose of requesting a warrant before revocation proceedings had initiated. Rather, the revocation process was well underway. At the time of the August 10th submission, Plaintiff had already been charged with violating six conditions of his probation in a declaration of delinquency filed with the court nearly two months earlier, followed by an amended statement of violation which added an additional condition violated. The August 10, 2015 second amended documents updated the court on the August 5th search and Plaintiff's arrest. In other words, "initiation of the [probation] revocation proceedings," *Scotto*, 143 F.3d at 112, had already occurred when Plaintiff was falsely accused of possessing methamphetamine; the second amended documents were simply in furtherance of those proceedings.

The Court therefore concludes that Spinner and Yaddow are entitled to absolute immunity in this context, because their function in filing the second amended documents during the adversarial process was "prosecutorial in nature," *Scotto*, 143 F.3d at 112, rather than in service of an administrative or investigative duty "further removed from the judicial phase of a criminal proceeding," *Malley*, 475 U.S. at 342–43.

### 2. False Allegation in Second Amended Submission

Even if Spinner and Yaddow were not entitled to absolute immunity, it appears that Plaintiff's claims related to the second amended submission must be dismissed because he has failed to plausibly state a claim that the alleged conduct violated his constitutional rights under § 1983.

To state a claim under § 1983, a plaintiff must allege: (i) that the challenged conduct was "committed by a person acting under color of state law"; and (ii) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13

F.3d 545, 547 (2d Cir. 1994)). A probation officer's "intentionally false report" that a probationer violated the terms of his or her release "can state a cause of action for deprivation of a [probationer's] constitutional rights." *Taylor v. Sullivan*, 980 F. Supp. 697, 705 (S.D.N.Y. 1997) ("[W]hile a prisoner's constitutional rights are not violated solely by being falsely accused of misconduct, false allegations that *immediately interfere* with substantive constitutional rights do violate a prisoner's constitutional rights." (emphasis added)), *aff'd*, 166 F.3d 1201 (2d Cir. 1998). Crucially, however, no constitutional issue is raised unless the false violation report "directly cause[d] the loss of liberty" alleged. *Id.*; *see also Zahrey v. Coffey*, 221 F.3d 342, 355 (2d Cir. 2000) ("It is firmly established that a constitutional right exists not to be *deprived of liberty* on the basis of false evidence fabricated by a government officer." (emphasis added)); *Aghoghoubia v. Noel*, No. 17-cv-1927, 2019 WL 181309, at *8, 2019 U.S. Dist. LEXIS 5659, at *24 (E.D.N.Y. Jan. 11, 2019) (same) (collecting cases); *Pena v. Travis*, No. 01-cv-8534, 2002 WL 31886175, at *14, 2002 U.S. Dist. LEXIS 24709, at *38 (S.D.N.Y. Dec. 27, 2002) (dismissing due process claim where "Plaintiff ha[d] not alleged what harm, if any, flowed from inclusion of the allegedly false information" in parole records).

Here, Plaintiff alleges that Spinner and Yaddow violated his constitutional rights by filing the second amended submission, in which Yaddow falsely accused Plaintiff of possessing methamphetamine. (Dkt. No. 1, ¶ 20; Dkt. No. 1-1, at 2–3). Even accepting the facts alleged in the Complaint as true, however, Plaintiff has not plausibly alleged that he suffered any deprivation of liberty as direct result of the false statement in the second amended documents. There is no indication that Plaintiff was charged with a probation violation premised on possession of methamphetamine, and there is no indication that his probation was revoked on that basis. Nor has Plaintiff alleged that he was arrested as a result of the false allegation in the

second amended documents; the amended submission was filed several days *after* his arrest by the Tupper Lake Police Department.[5] Rather, Plaintiff's loss of liberty was directly caused by his *admission* to violating four conditions of his probation—all of which occurred before his alleged possession of methamphetamine—including testing positive for marijuana, cocaine, suboxone, and opiates, as well as failing to complete drug treatment. (Dkt. No. 1-1, at 3).

Accordingly, even if Spinner and Yaddow did not have absolute immunity for the alleged false statement in the second amended submission, the Complaint does not appear to plausibly state a cause of action for deprivation of Plaintiff's constitutional rights.

### B. Claims Against Unidentified Supervisor Defendants[6]

"[T]he personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (internal quotation marks omitted). As the Second Circuit has explained, a supervisor's personal involvement may be shown through evidence that he: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred;

---

[5] While Defendants argue that Plaintiff failed to allege that he caused any constitutional deprivation, neither of the parties specifically addressed the viability of his malicious prosecution claim. "Under New York law, a malicious-prosecution claim requires a plaintiff to show '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions.'" *Dettelis*, 919 F.3d at 163–64. Here, the Court notes that the facts alleged: (i) do not indicate that Spinner and Yaddow initiated criminal proceedings against Plaintiff on the basis of his alleged possession of methamphetamine; (ii) do not indicate favorable termination of the methamphetamine-related accusations against him; and (iii) do not demonstrate a lack of probable cause to file the second amended documents alleging that Plaintiff violated the conditions of his probation. The Court further notes that Plaintiff has not challenged the validity of his admission to violating four conditions of his probation.

[6] Counsel for the Individual Defendants and County Defendants do not indicate whether they also appear on behalf of the Doe Defendant supervisor probation officers. Their failure to do so, however, appears to be an oversight, as their submissions argue that the Complaint "must be dismissed in its entirety" with regard to "Defendants" collectively. (Dkt. No. 20-1, at 5). In any event, because of the complete inadequacy of the allegations against the Doe Defendants, described below, the Court exercises its "inherent authority to dismiss meritless claims *sua sponte*." *Sanya Lanausse v. City of New York*, No. 15-cv-1652, 2016 WL 2851337, at *2, 2016 U.S. Dist. LEXIS 63414, at *4 (S.D.N.Y. May 13, 2016) (citing *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000)).

(4) had been grossly negligent in managing subordinates who caused the violation; or

(5) exhibited deliberate indifference by failing to act on information indicating that an unconstitutional act was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[7]

Here, Plaintiff alleges only that: Spinner and Yaddow committed the misconduct alleged "under the direct supervision" of the Doe Defendants, (Dkt. No. 1, ¶¶ 20–22); the Doe Defendants "permitted, authorized, and directed Spinner and Yaddow to make the . . . false accusations" against Plaintiff, (*id.* ¶ 19, 33, 36); and the Doe Defendants "took no action to protect Plaintiff" from the constitutional violations alleged, (*id.* ¶ 19). These allegations fail to demonstrate "individual, personalized liability on the part" of the Doe Defendants. *Raspardo*, 770 F.3d at 115–16. Under any of *Colon*'s theories of personal involvement, the Complaint is completely devoid of any specific factual allegations showing the Doe Defendants' role in the violations alleged. *See White v. Fischer*, No. 09-cv-240, 2010 WL 624081, at *6, 2010 U.S. Dist. LEXIS 15464, at *20 (N.D.N.Y. Jan. 20, 2010) ("Vague and conclusory allegations that a supervisor failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability."), *report-recommendation adopted*, 2010 WL 624081, 2010 U.S. Dist. LEXIS 15492 (N.D.N.Y. Feb. 18, 2010). Because there are no nonconclusory allegations that the Doe Defendants were personally involved in violating Plaintiff's constitutional rights, Plaintiff has failed to state a claim against them. *See Smith v. Hochul*, No. 13-cv-1106, 2015 WL 1432644, at *6, 2015 U.S. Dist. LEXIS 39539, at *16 (W.D.N.Y. Mar. 26, 2015).

---

[7] Following the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), this Court has concluded that the *Colon* factors apply where a plaintiff's "claims do not require a showing of discriminatory intent and are based on the unreasonable conduct standard of the Fourteenth Amendment." *Montanez v. City of Syracuse*, No. 16-cv-00550, 2019 WL 315058, at *18, 2019 U.S. Dist. LEXIS 10351, at *51 (N.D.N.Y. Jan. 23, 2019). Here, because Plaintiff's claims do not require a showing of discriminatory intent, the Court will apply the *Colon* factors.

In any event, because Spinner and Yaddow are entitled to absolute immunity, *see supra* Section IV.A.1, "those derivative allegations against [the Doe Defendants] must also be dismissed on the ground that the supervising [officials] have absolute immunity for the prosecution-related decisions of their subordinates." *Bodie v. Morgenthau*, 342 F. Supp. 2d 193, 205 (S.D.N.Y. 2004) (internal quotation marks omitted). Accordingly, the claims against the Doe Defendants are dismissed.

### C. *Monell* Claims

"Establishing the liability of the municipality requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors and, in addition, that their commission of the tort resulted from a custom or policy of the municipality." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) (citing *Monell*, 436 U.S. at 690–91). "To impose liability on a municipality under § 1983, a plaintiff must identify a municipal policy or custom that caused the plaintiff's injury." *Newton v. City of New York*, 779 F.3d 140, 152 (2d Cir. 2015) (internal quotation marks omitted). A municipality is liable only if the plaintiff shows that he has been the victim of a constitutional violation "by persons for whose conduct the municipality can be responsible," because, absent a tortious injury, "*Monell* does not create a stand-alone cause of action" permitting plaintiffs to challenge a governmental policy. *Askins*, 727 F.3d at 253. Thus, to the extent Plaintiff has failed to plausibly allege that his rights were violated by the allegedly unfounded allegation that he possessed methamphetamine, *see supra* Section IV.A.2., Plaintiff's claims against the County Defendants based on that misconduct must also fail.

On the other hand, the officers' immunity does not extend to the County Defendants. Immunity may shield an official from suit, but that immunity does not extend to county or municipal defendants because "municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983." *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1153 (2d Cir. 1995)

15

(quoting *Leatherman v. Tarrant Cty. Narcotics Intel. and Coordination Unit*, 507 U.S. 163, 166 (1993)).

However, "in the context of a motion for judgment on the pleadings, to allege the existence of an affirmative municipal policy, a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 444 (E.D.N.Y. 2012). Boilerplate or threadbare "assertions that a municipality has such a custom or policy that resulted in a deprivation of the plaintiff's rights is insufficient to state a *Monell* claim." *Id.*; *see also Holland v. City of New York*, 197 F. Supp. 3d 529, 552 (S.D.N.Y. 2016) ("[C]onclusory allegations that a municipality failed to train and supervise its employees are insufficient to state a *Monell* claim absent supporting factual allegations." (internal quotation marks omitted)).

Here, Plaintiff's *Monell* claim must be dismissed because the allegations in the Complaint are wholly conclusory. Specifically, Plaintiff alleges that: (i) Spinner, Yaddow, and acted "pursuant to either official policy or the custom, practice and usage" of the County Defendants (Dkt. No. 1, ¶¶ 10–12, 15); (ii) Defendants "engaged in a pattern of falsely accusing the Plaintiff," (*id.* ¶ 25); (iii) the County Defendants "created or allowed a policy or a custom under which" Spinner, Yaddow, and the Doe Defendants "were directed, permitted and encouraged" to make false accusations against Plaintiff, (*id.* ¶ 33); and (iv) the County Defendants were "grossly negligent" in their supervision and training of their employees, (*id.* ¶¶ 33, 36). Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim that a plaintiff's constitutional rights were

violated. *Iqbal*, 556 U.S. at 678. Because Plaintiff has failed to plead facts plausibly demonstrating the existence of a custom or policy requiring or encouraging probation officers to mislead or misinform judges, his *Monell* claim against the County Defendants is dismissed.

**D.    State Law Claims**

As Plaintiff has no remaining federal claims, the Court declines, in its discretion, to retain supplemental jurisdiction over his state law claims. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (stating that, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims"). With the dismissal of the federal claims prior to the investment of significant judicial resources, the "traditional 'values of judicial economy, convenience, fairness and comity'" weigh in favor of declining to exercise supplemental jurisdiction. *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Cohill*, 484 U.S. at 350). Accordingly, Plaintiff's state law claims are dismissed without prejudice.

**V.    CONCLUSION**

For these reasons, it is hereby

**ORDERED** that Defendants' motion for judgment on the pleadings (Dkt. No. 20) is **GRANTED**; and it is further

**ORDERED** that the Complaint (Dkt. No. 1) is **DISMISSED**.

**IT IS SO ORDERED.**

Dated: July 30, 2019
Syracuse, New York

Brenda K. Sannes
U.S. District Judge